725 P.2d 266

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Michael LUCERO, Defendant-Appellant.**

**No. 8933.**

Court of Appeals of New Mexico.

Aug. 21, 1986.

Jacquelyn Robins, Chief Public Defender, Wendy York, Sheila Lewis, Asst. Appellate Defenders, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals from his convictions of three counts of child abuse, contrary to NMSA 1978, Section 30–6–1 (Repl.Pamp. 1984) and the enhancement of his sentences, pursuant to the Habitual Offender Act, NMSA 1978, Section 31–18–17(D) (Cum.Supp.1986). Defendant raises six appellate issues:

1. Whether the trial court erred in permitting a witness to testify to hearsay statements made by one of the victims.

2. Whether the trial court erred in barring the withdrawal of defendant's appointed trial counsel and refusing to appoint substitute counsel.

3. Whether the trial court erred in failing to conduct a *Faretta* inquiry before allowing defendant to represent himself at the habitual hearing.

4. Whether the trial judge abused his discretion in refusing to recuse himself.

5. Whether the trial court erred in imposing three consecutive habitual offender enhancements, thus violating constitutional prohibitions against double jeopardy and cruel and unusual punishment.

6. Whether the trial court erred in refusing to grant a mistrial due to alleged juror misconduct.

We affirm the convictions. Because we hold that the trial court erred in refusing to appoint substitute counsel at the habitual proceeding, we reverse the sentences and remand for a new habitual hearing. Because we remand for a new hearing, we do not discuss Issue 3.

### Admission of Hearsay Statements

The child abuse incidents for which defendant was convicted involved three children, ages four years old, three years old, and one year old. The children's mother was defendant's girl friend. The incidents occurred near the early morning hours of February 20, 1985. At about 12:45 p.m., on February 20, the children were taken to the emergency room at the San Juan Regional

Hospital in Farmington. Dr. Glennie conducted the examinations of the children.

At trial, the state called Dr. Glennie to testify as to the causation and nature of the children's injuries. Dr. Glennie testified that the four-year-old child had given the history of the injuries. When asked what the child had said, defendant raised a hearsay objection, arguing that the testimony did not come within any hearsay exception. The state responded that the statement was offered for the purpose of medical diagnosis or treatment, thus, within an exception to the hearsay rule. NMSA 1978, Evid.R. 803(4) (Repl.Pamp.1983). The court ruled that the testimony was "probably appropriate," but more foundation was required.

The state then asked the doctor whether he talked to any of the children, and, if so, whether the children told him how the injuries occurred. This questioning also drew another hearsay objection from defendant, and the court again ruled that more foundation was necessary.

Finally, the state asked the doctor if, at the time he obtained the history, he was preparing treatment; if he took the history for the purpose of making diagnosis; and if obtaining the history was for the purpose of determining the kinds of treatment available. When the doctor answered these inquiries affirmatively, the court overruled the hearsay objections and allowed the testimony. The doctor then testified that the four-year-old said that "Michael [defendant] had hit the three children." Defendant raised no objection to this testimony.

On appeal, defendant argues that, on two alternative grounds, the trial court erred in allowing the doctor to testify to the child's statement. First, defendant argues that the testimony does not fall within the Rule 803(4) exception to the hearsay rule. The basis of defendant's argument is that because the child's statement attributed fault to defendant, the statement was not "reasonably pertinent" to the diagnosis and treatment of the children's injuries. *See State v. Ruiz*, 94 N.M. 771, 617 P.2d 160 (Ct.App.1980). Second, defendant argues that even if the child's statement falls within the Rule 803(4) exception, by allowing the testimony the court denied defendant his constitutionally guaranteed right to confront a witness against him, namely the child.

The state, however, counters that neither of these issues was adequately preserved for appellate review. We agree and discuss each issue separately.

### a. Hearsay Objection

■ It is well-settled that objections must be raised below to preserve an issue for appellate review. NMSA 1978, Evid.R. 103(a)(1) (Repl.Pamp.1983). Not only must the objection be raised below, but the objection must be sufficiently timely and specific to apprise the trial court of the nature of the claimed error and to invoke an intelligent ruling by the court. *State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct.App. 1982).

■ Admittedly, defendant made two general hearsay objections to the doctor's testimony. Both of these objections, however, apparently went to the adequacy of the foundation for the testimony. When the state laid an adequate foundation and the court permitted the doctor to testify to the child's statement, defendant raised no objection. Not until the doctor had related the child's statement was it known that the statement was accusatory in nature. It was at this point that defendant should have raised the argument that he now asserts on appeal.

The argument that statements attributing fault do not fall within the Rule 803(4) exception was not made to the trial court. The court had no opportunity to consider the merits of, or to rule intelligently on, the argument defendant now puts before us. *State v. Casteneda.* The issue, therefore, was not preserved for appellate review.

### b. Confrontation

■ The issue of denial of the right to confrontation may not be raised for the

first time on appeal. *State v. Baca*, 81 N.M. 686, 472 P.2d 651 (Ct.App.1970). Defendant did not expressly raise the confrontation issue below. Therefore, we must determine whether defendant's general hearsay objections were adequate to preserve the issue for appellate review. Defendant argues that the United States Supreme Court, in *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), "clearly established" that, in situations such as the one before us, general hearsay objections are sufficient to preserve the confrontation issue. Defendant, however, reads the holding in *Douglas* too broadly.

In *Douglas*, the defendant, on three occasions, objected to the admission of a confederate's confession. In one objection, the defendant grounded his objection on the bases that he was absent during the giving of the confession and that he had no opportunity to cross-examine the witness. The defendant, in raising the objection, however, made no specific reference to a denial of confrontation. Thus, the Alabama Court of Appeals ruled that the defendant did not preserve the confrontation question for appellate review.

The Supreme Court disagreed, articulating a standard by which to gauge whether a federal question has been preserved: "[A]n objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review here." *Id.* at 422, 85 S.Ct. at 1078–79.

Contrary to the facts before the Court in *Douglas*, defendant here did not make a timely objection. When the doctor testified that the child had implicated defendant in inflicting the injuries, defendant made no objection. Rather, defendant raised his objections prior to the doctor's testimony as to the content of the child's statement.

Additionally, defendant's objection was not sufficiently specific to alert the trial court to the claimed constitutional error. Admittedly, there may be situations, such as in *Douglas*, where a hearsay objection will preserve a claim. Specifically, "[w]hen a hearsay objection is lodged * * * on the grounds that the declarant has not been made available at trial and, as a result, cannot be subjected to cross-examination, the policy of the confrontation clause is invoked equally with that of the hearsay rule." *Dias v. State*, 95 Nev. 710, 714, 601 P.2d 706, 709 (1979) (per curiam).

Defendant here, however, only contended that the child's statement did not fall within an exception to the hearsay rule. Such an objection was too broad to raise the right to the confrontation issue. *State v. Nelson*, 329 N.W.2d 643 (Iowa 1983). The trial court was only required to rule on the objection as it was made. The court fulfilled this duty. " 'Nothing more was required of him.' " *Id.* at 645 (quoting *State v. Farni*, 325 N.W.2d 107, 109 (Iowa 1982)). The court had no opportunity to reach the confrontation issue. On that basis, we refuse to find error. *See Fitzpatrick v. State*, 7 Ark.App. 246, 647 S.W.2d 480 (1983); *State v. Weinberger*, 665 P.2d 202 (Mont.1983). *Contra State v. Sykes*, 569 S.W.2d 258 (Mo.App.1978) (admission of co-defendant's confession over general objection will not bar appellate review because admission of such evidence is plain error).

**Refusal to Appoint Substitute Counsel**

Prior to the commencement of the trial on September 16, 1985, defendant's appointed counsel, Richard J. Gallagher, filed, on September 13, 1985, a motion to withdraw from representation of defendant. As the basis for the motion, counsel stated that following a discussion of plea negotiations with the district attorney's office, on September 9, 1985, defendant informed counsel that he was "fired" and that defendant would retain counsel. On September 10, 1985, defendant filed a grievance against counsel with the Disciplinary Board, alleging that counsel had not heard defendant's story and had conspired with the district attorney and trial court to force

defendant into entering a plea agreement. Defendant stated that he demanded suspension of counsel's license to practice law and "won't stop untill [sic] I get it." Defendant then failed to obtain retained counsel, and Mr. Gallagher moved to withdraw on the bases that he and defendant were not communicating and that "movant cannot continue to represent the Defendant within the bounds of the Code of Professional Responsibility when movant is required to zealously defend his client while his client's avowed intention is to have movant's license."

The trial court denied counsel's pretrial motion as well as counsel's renewed motion at the habitual hearing. We affirm the pretrial denial of the motion to withdraw and reverse the denial of the withdrawal motion at the habitual hearing. First, we discuss the general standard for withdrawal of appointed counsel, and then we apply that standard to each proceeding.

### Withdrawal of Appointed Counsel

Through the sixth amendment to the federal constitution, an indigent criminal defendant is guaranteed appointed counsel at each critical stage of the criminal proceedings. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The sixth amendment is obligatory on the states through the Due Process Clause of the fourteenth amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

While an indigent defendant has a right to appointed counsel, the defendant does not have the concomitant right to the appointment of the attorney of his choice. *State v. Maes*, 100 N.M. 78, 665 P.2d 1169 (Ct.App.1983). In order to dismiss the appointed counsel, a defendant must come forward and make a showing that failure to appoint substitute counsel will result in ineffective representation or prejudice to the defense. *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977). The decision of whether to appoint substitute counsel then rests within the sound discretion of the trial court. *State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982).

### a. The Trial

At the pretrial hearing on the motion to withdraw, the trial court denied the motion apparently on two grounds. First, the court found that defendant had not articulated a sound justification for replacement of counsel. We agree. Counsel's urging defendant to enter a plea agreement certainly does not amount to ineffective assistance. *State v. Lujan*, 82 N.M. 95, 476 P.2d 65 (Ct.App.1970). Moreover, the conflict which arose between defendant and counsel apparently was caused by defendant's actions. The record reflects that counsel attempted to develop a lawyer/client relationship with defendant, but defendant rejected his efforts. Defendant's uncooperative attitude does not merit the appointment of substitute counsel. *State v. Orona*, 97 N.M. 232, 638 P.2d 1077 (1982).

Second, the trial court ruled that, by seeking appointment of substitute counsel, defendant was attempting to delay the proceedings. The trial court appointed counsel to represent defendant on March 22, 1985. Defendant, however, did not raise any objections to his appointed counsel until early September, just before trial. The trial was set for September 16, 1985. By that time, the six-month deadline for commencing the trial had almost elapsed. NMSA 1978, Crim.P.R. 37(b) (Repl.Pamp. 1985). If the trial were not commenced within the six-month period, the delay would necessitate a dismissal of the charges. Crim.P.R. 37(d).

We, therefore, similarly conclude that the trial court did not abuse its discretion in ruling that defendant instigated the conflicts as a tactical maneuver to thwart the proceedings. Defendant cannot be permitted to frustrate the criminal process by deciding at the last moment to reject his court-appointed counsel. *State v. Maes; State v. Williams*, 83 N.M. 185, 489 P.2d 1183 (Ct.App.1971).

We also agree with the state's argument that counsel's desire to withdraw

and his contention that he could not effectively represent defendant did not mandate appointment of substitute counsel. *State v. Orona.* Requests to withdraw are measured by the sixth amendment promise of effective assistance of counsel. *State v. Bell.* In order to support an allegation of ineffectiveness, defendant would have had to show that counsel's performance would fall below that of a reasonably competent defense attorney and that counsel's performance would prejudice him in asserting his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Price,* 25 SBB 544 (Ct.App. 1986).

From our review of the trial record, we conclude that counsel's performance equalled that of a reasonably competent defense attorney. *State v. Orona.* He conducted voir dire and made an opening statement; he cross-examined the state's witnesses; he called and examined defense witnesses; and he delivered a closing argument. Because counsel's representation was effective, we need not reach the prejudice question. *State v. Price.*

Defendant, however, relies heavily on *Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970), in arguing that the court abused its discretion in refusing to appoint substitute counsel. In *Brown,* the court held that when a criminal defendant is required to go to trial represented by a counsel with whom he is embroiled in irreconcilable conflict, the defendant is denied effective assistance of counsel.

Our reading of *Brown,* however, does not prompt us to reach a different result. In *Brown,* the court of appeals was persuaded by two considerations. First, the trial court denied the defendant's request for substitute counsel without conducting an inquiry into the source of the defendant's dissatisfaction. Second, the court of appeals expressly concluded that the defendant was not objecting to appointed counsel as a means to delay the proceedings. In so concluding, the court noted that the defendant objected to appointed counsel months before the case went to trial. The court also distinguished a contrary result it had reached when a defendant moved to disqualify counsel one day before the trial. *Good v. United States,* 378 F.2d 934 (9th Cir.1967) (per curiam).

Thus, *Brown* is clearly distinguishable from the case before us. The trial court here granted defendant an opportunity to express his dissatisfaction and the reasons for it. Additionally, defendant here did not lodge his objection until right before the case was set for trial; thus, the facts here are more akin to those in *Good* than those in *Brown.*

Accordingly, we hold that the trial court did not abuse its discretion in refusing to appoint substitute counsel at trial.

### b. The Habitual Hearing

We, however, hold that the court abused its discretion in refusing to appoint substitute counsel to represent defendant at the habitual hearing. At the beginning of the hearing, counsel renewed his motion to withdraw. The court again denied the motion. Counsel then informed the court that he would not aid or represent defendant, fully mindful that the court could hold him in contempt. He then asked defendant whether defendant understood that he would not represent or assist defendant unless defendant specifically requested assistance. Defendant, however, repeatedly requested substitute counsel and made a frustrated attempt to represent himself.

These facts present a peculiar situation. On the one hand, defendant did not desire to proceed pro se, but the court ordered counsel to remain as standby counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). On the other hand, defendant was not denied his right to counsel. *State v. Hamilton,* 104 N.M. 614, 725 P.2d 590 (Ct.App.1986). In fact, the court stated that it would "inflict the protection of the Constitution" on defendant by requiring counsel to remain at the hearing.

In so doing, however, it should have been clear to the court that defendant would not

be effectively represented. Counsel's statement that he intended to do nothing in aid or representation of his client predicts a performance below the standard of a reasonably competent defense attorney. *State v. Orona.* Defendant undoubtedly would be prejudiced in his defense when he unwillingly and unpreparedly undertook self-representation.

We, therefore, hold that the trial court abused its discretion in refusing to appoint substitute counsel at the habitual hearing. We vacate the sentences and remand the case for a new hearing. Mr. Gallagher should not be appointed to represent defendant at the hearing.

### Failure to Recuse

The Constitution of the State of New Mexico provides, in pertinent part, that "[n]o justice, judge or magistrate of any court shall, except by consent of all parties, sit in any cause * * * in which he was counsel. * * *" N.M. Const. art. VI, § 18; NMSA 1978, Code of Judicial Conduct, Canon 4 (Repl.Pamp.1985). This constitutional right to disqualify a judge, however, may be waived. *State v. Miller,* 79 N.M. 392, 444 P.2d 577 (1968). Additionally, a motion to disqualify must be timely asserted in order to prevent waiver. *State v. Cline,* 69 N.M. 305, 366 P.2d 441 (1961) (construing NMSA 1953, § 21–5–8 predecessor statute of NMSA 1978, § 38–3–10 (Repl.Pamp.1984)); NMSA 1978, Crim.P.R. 34.1(b) (Repl.Pamp.1985).

Defendant here acknowledges that he failed to raise the disqualification issue before or during the child abuse proceeding. By failing to do so, defendant waived his right to disqualify the judge. *State v. Miller.* In so holding, we need not decide whether defendant had the right to disqualify the judge from the child abuse proceeding.

Defendant, however, raised the disqualification issue at the habitual hearing. Because the habitual hearing concerned prior felony convictions, it is conceivable that the trial judge represented defendant in a cause for which defendant was now on trial. N.M. Const. art. VI, § 18; Code of Judicial Conduct, Canon 4. It is also possible, however, that the prior representation was not brought to the court's attention in a timely fashion. *State v. Cline.*

We need not, however, decide these questions because we have already held that defendant is entitled to a new habitual hearing. Even though Judge Eastburn conducted the proceedings with dignity and patience while confronted with a difficult situation, we direct that he should not sit at the new habitual hearing and that an alternate judge should be designated to preside over the proceeding.

### Consecutive Enhancements

We answer this issue in case the question arises again in the new habitual proceeding. Defendant was convicted of three counts of fourth-degree child abuse. § 30–6–1. The court sentenced him to eighteen months on each count. The court then enhanced each sentence by eight years, pursuant to Section 31–18–17(D). The court ruled that the sentences will run consecutively, amounting to twenty-eight and one-half years.

Defendant argues that in imposing the three consecutive enhancements, the trial court violated the constitutional prohibitions against double jeopardy and cruel and unusual punishment. In so arguing, defendant acknowledges that we rejected this argument in *State v. Harris,* 101 N.M. 12, 677 P.2d 625 (Ct.App.1984). He urges us now, however, to overrule that decision. We decline to do so for the reasons stated in *Harris;* namely, the length of a sentence is a legislative prerogative, and, without a compelling reason, we do not impose our views concerning the appropriate punishments for crimes.

### Juror Misconduct

During the course of the trial, individual jurors sent three notes to the court. Defendant moved for a mistrial on the basis that the jurors had prematurely determined his guilt. The court denied the motion. On appeal, defendant argues that because the jurors prematurely formed an opinion

concerning his guilt, he was denied his sixth amendment right to a fair and impartial jury.

We hold, however, that the issue is not properly before us. Defendant did not raise the issue in his docketing statement nor did he move to amend his docketing statement to include the issue. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 205 (Repl.Pamp.1983); *State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct. App.1983). Moreover, from the record before us, we cannot definitely determine whether the jurors issued the notes before or after they were instructed to commence their deliberations. Absent a record indi-

cating differently, we will assume no error. *State v. Richter*, 93 N.M. 55, 596 P.2d 268 (Ct.App.1979).

Therefore, we affirm defendant's convictions and remand for a new habitual hearing in accordance with this opinion.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.